UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK STEPHEN HICKS,    Case No. 1:15-cv-110

       Plaintiff,    Barrett, J.
                                                                                        Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Mark Hicks filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is NOT supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In June, 2010, Plaintiff, a veteran, filed an application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). Plaintiff's applications allege a disability onset date of March 15, 2009 based upon residual physical injuries from a 1976 compression fracture at C5, 1982 and 1986 surgeries on his lumbar spine, degenerative disc disease, facet arthrosis, sleep apnea, PTSD, and depression. He is insured for purposes of DIB through September 31, 2011.

1

After Plaintiff's applications were denied initially and upon reconsideration, he requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On February 3, 2012, a hearing was held in Tampa, Florida before ALJ Richard Oellette.[1] (Tr. 70-91). Plaintiff appeared along with a non-attorney representative, Edward Jordan, and both Plaintiff and a vocational expert ("VE") testified. On April 24, 2012, ALJ Oellette issued a decision, concluding that Plaintiff was not disabled. (Tr. 57-65). After obtaining counsel, Plaintiff sought review before the Appeals Council. The Appeals Council agreed to reopen the case in order to allow new counsel time to review the record and submit arguments on Plaintiff's behalf. (Tr. 8-21). However, on January 9, 2015, the Appeals Council confirmed its denial of review. (Tr. 1-7). Therefore, the ALJ's decision remains as the final decision of the Commissioner. Plaintiff filed the instant complaint in order to challenge the ALJ's decision.

Plaintiff was 50 years old at the time his application was filed, and 53 at the time of the ALJ's decision, which is defined as an individual "closely approaching advanced age." (Tr. 64). He has a high school education and past relevant work as a service writer, belt replacer, and carpenter.

The ALJ determined that Plaintiff has but a single severe impairment, "generalized back pain," (Tr. 59), which did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (Tr. 59-60). Instead, the ALJ determined that Plaintiff still retained the residual functional capacity ("RFC") to perform a range of light work. Specifically, the ALJ found Plaintiff could

---

[1]Plaintiff previously lived in Florida.

2

> lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day with frequent limitations (2/3 of the day) for bending, stooping, crouching, and kneeling but capable of performing routine tasks in an air-conditioned environment.

(Tr. 61). Based on the testimony of the vocational expert, the ALJ determined that although Plaintiff could not return to his past work, he still could perform representative unskilled jobs such as mail room clerk, laundry sorter, or office helper. Therefore, the ALJ concluded that Plaintiff is not under a disability. (Tr. 65).

In his Statement of Errors, Plaintiff argues that the ALJ erred: (1) by failing to account for all of Plaintiff's impairments when formulating his physical RFC; (2) by improperly weighing the medical opinion evidence; and (3) by improperly assessing Plaintiff's credibility.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a

3

whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he

4

suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

#### 1. Failure to Fully Account for All Impairments

Plaintiff argues first that the ALJ erred by failing to consider the "combined impact" of his physical impairments in determining his RFC. Without discussion of the evidence supporting any physical impairment at Step 2, the ALJ found that Plaintiff has the "severe" impairment of "generalized back pain." The ALJ included full discussion only of Plaintiff's mental impairments of PTSD and depression, which the ALJ determined were "non-severe."[2]

Plaintiff asserts that the ALJ erred by failing to address whether any of his other claimed impairments were severe or non-severe, and failed to consider them either together or individually. *See Walker v. Sec'y of HHS*, 980 F.2d 1066, 1071 (6th Cir. 1992). Plaintiff notes that other than the reference to "generalized back pain" in his lumbar spine, the ALJ failed to mention his significant cervical spine degenerative disc disease, the diagnosis of dural ectasia in his lumbar spine, or his right carpal tunnel syndrome. Moreover, Plaintiff contends that the ALJ improperly minimized his lumbar spine impairments. I agree.

To the extent that Plaintiff is <u>only</u> alleging error at Step 2 of the sequential analysis, the Defendant correctly points out that such errors generally do not provide grounds for reversal, so long as the ALJ has found at least one "severe" impairment and proceeded through the remainder of the sequential analysis. *See, e.g., Maziarz v.*

---

[2]Despite a general reference to the failure to consider all impairments, Plaintiff's arguments pertain only to his physical impairments; therefore, he is deemed to have waived any challenges concerning his alleged mental impairments of depression and PTSD.

5

*Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). However, the undersigned does not read Plaintiff's argument as limited to an assertion Step 2 error. And, even if it were, the facts presented arguably constitute the rare case in which the ALJ's failure to address additional impairments at Step 2 may itself provide sufficient grounds for remand. *Accord Shiveley v. Com'r of Soc. Sec.*, 2014 WL 7653637 (S.D. Ohio, Dec. 22, 2014) (noting "relatively unusual case in which multiple errors flowed from the ALJ's erroneous determination at Step 2 that Plaintiff's fibromyalgia was non-severe, including a failure to obtain additional medical evidence, a failure to properly evaluate her subjective complaints of pain, and a failure to properly evaluate her RFC."), adopted as modified at 2015 WL 248092 (S.D. Ohio, Jan. 20, 2015).

As in *Shiveley*, Plaintiff's argument goes further than Step 2 error, complaining that the ALJ failed to include specific limitations based upon the unaddressed impairments. Plaintiff alleges that the following limitations are attributable to the unaddressed impairments: "greater limits on the total amount of sitting, standing, and/or walking"; "the addition of a requirement to alternate sitting and standing; limitations on postural activities such as balance; limitations on the use of at least the right upper extremity; and limits on environmental activities such as exposure to hazards." (Doc. 16 at 2). To support such limitations, Plaintiff cites multiple medical records. (*See, e.g.*, Tr. 254-261 (detailed summary of medical evidence by Department of Veterans Affairs), 306, 316-318, 320, 325, 328, 352-353, 397-399, 413-414 (EMG "normal" study noting evidence of chronic right carpal tunnel syndrome), 421, 429, 460-462, and 648). Essentially, Plaintiff's first claim challenges the RFC as not supported by substantial evidence.

6

The undersigned agrees that the ALJ should have provided additional analysis concerning Plaintiff's cervical spine impairment.  The record includes a September 2009 MRI of Plaintiff's cervical spine that shows diffuse C5-6 disc protrusion producing mild central stenosis without core compression but with moderate to severe bilateral C6 foraminal stenosis and degenerative disc disease, which caused various other documented changes to his cervical spine. (Tr. 316, 397-398).

Several examinations reflected some weakness in Plaintiff's right upper extremity, and he complained of pain in his arms and intermittent numbness in his hands, which he attributes to his cervical spine changes.  An EMG evidences chronic carpal tunnel syndrome on his right side, although Plaintiff asserts that several of the reported difficulties with raising his arms and weakness in his upper extremities were "more likely attributable to Plaintiff's cervical spine impairment."  (Doc. 11 at 14, n.4).[3] Regardless of the precise diagnosis, Plaintiff points to objective evidence in the MRI, EMG, and objective clinical findings to warrant at least some analysis regarding the use of his right upper extremity, as well as additional discussion of limitations relating to his cervical spine impairment.  (Tr. 61).

Similarly, the undersigned agrees that at least a modicum of additional discussion is warranted concerning Plaintiff's lumbar spine impairments.  Plaintiff relies on his "complicated" history of degenerative changes, including scar tissue at the nerve roots, degenerative spurring, and dural ectasia.  (Tr. 317).  Apparently relying primarily on the lack of disc herniation in the MRI report, the ALJ discussed little else, and did not discuss the dural ectasia diagnosis.  (Tr. 63, citing Tr. 733).  Although a diagnosis alone does not provide evidence of limitations, Plaintiff argues that his dural ectasia provides

---

[3]The records cited by Plaintiff for this proposition do not appear to support his hypothesis.

7

an objective basis that supports the extent of his low back pain and/or radicular pain. Additionally, an MRI showed some scar tissue. (Tr. 733-34). While emphasizing the lack of herniated discs, the ALJ failed to discuss other portions of the record, including disc "protrusions," scar tissue, degenerative spurring, and endplate changes, all of which contributed to moderate to severe bilateral C6 foraminal stenosis and dural ectasia in the lumbar spine. (Tr. 316, 379).

Arguing that Plaintiff has failed to show any prejudice, the Defendant suggests that the MRI does not help Plaintiff insofar as it states that it is "possible" that the degenerative changes noted date back to when Plaintiff was 17 years old and injured in military service. (Tr. 63, 733). However, the reference in the record in question relates to a question by Plaintiff as to whether his current lumbar spine issues might relate back to the cervical spine injury he sustained at age 17 while in the military, for the express purpose of determining Plaintiff's eligibility for service-connected disability benefits. Solely in that context did the physician conclude: "In light of the degenerative changes seen in the cervical and lumbar spine, it is within the realm of possibility that these changes were caused or exacerbated by the trauma sustained at age 17." (Tr. 733). In short, the physician acknowledged only that the origin of the *degenerative* changes currently observed *might* have begun as long ago as his original cervical spine fracture at age 17.

The ALJ correctly noted that Plaintiff's low back problems dated to 1976 when he suffered a cervical spine fracture during his military service. (Tr. 62). After recovering from 1982 and 1986 surgeries, the record reflects that Plaintiff did well until March 2009, when he experienced radiating low back pain when he bent over to pick up his dog. (Tr.

8

62, 254). Another back surgery followed in October 2009, following which he continued to report a "moderate amount of chronic pain and extremity numbness"). (Tr. 62, 316).

Plaintiff claims that his RFC should have, at a minimum, included limitations on sitting or standing including an option to alternate, in light of progress notes that describe limitations with "prolonged sitting, standing, or walking." (*See* Tr. 316, 318, 320, 325, 328). Plaintiff also asserts error in the failure to include RFC limitations precluding the use of ladders, ropes, or scaffolds. (*See* Tr. 255, 421, 461-462).

As support for a far less restrictive RFC, the ALJ cites one record, dated February 2010, in which Plaintiff reported walking three miles per day, seven days per week. (Tr. 62, citing 318). However, considering Plaintiff's late October 2009 surgery, he was engaged in that level of activity for not more than a few months, at most. (Tr. 83-84, 305, 318). In fact, Plaintiff's physician immediately counseled him against that level of activity at the time he reported it, advising him to scale back to 1-2 miles per day, not more than 3-4 days per week. (Tr. 318). By June of 2010, Plaintiff reported that he was in so much pain he needed to lay down in the examination room.

The Defendant argues that the fact that Plaintiff's physician advised him to scale back the amount of walking he did in 2010 does not mean the decision should be reversed, because Plaintiff was still deemed capable of a significant amount of walking in 2010. However, Plaintiff's back impairments clearly are degenerative in nature. Rather than considering the record as a whole, the ALJ appears to have overly focused on a discrete period of time in 2010 in which Plaintiff was relatively physically active, without fully considering Plaintiff's explanations of those activities or other evidence of impairment, which was fairly consistent throughout the record. (*See* Tr. 82-84). On the whole, the ALJ discounted Plaintiff's complaints of disabling pain primarily based on a

9

single report to one examiner. (*See* Tr. 645). Because social security cases are so heavily fact-dependent, the undersigned acknowledges that a single record might support an adverse decision in another case. Here, however, it does not.

Based on the failure of the ALJ to adequately discuss Plaintiff's additional physical impairments, and reviewing the record as a whole, I recommend remand for further evaluation of Plaintiff's physical impairments, including the extent of multiple lumbar and cervical spine issues, including radiculopathy and/or carpal tunnel syndrome. While an ALJ is not required to discuss every piece of evidence (an impossibility in most cases), in this case the ALJ's analysis was simply too cursory for the undersigned to find that substantial evidence exists to support the RFC.

**2. Weight Given To Medical Evidence In Formulating RFC Determination**

In Plaintiff's second assignment of error, he contends that the ALJ failed to adhere to the regulatory scheme when he gave "great weight" to the opinions of non-examining consultants, "some weight" to a third party function report completed by Plaintiff's sister, and "little weight" to the disability rating decision from the Department of Veterans Affairs. (Tr. 63). The ALJ also failed to specify precisely how much weight he was giving to examining consultants, Drs. Shyngle and Jean. In contrast to the way in which the ALJ weighed the various medical opinions, Plaintiff argues that the ALJ should have given the greatest weight to the VA's disability decision, and only "some weight" to all other examining and non-examining consultants.

Even though the ALJ cited the relevant regulation, Plaintiff complains that he "failed to provide any in-depth, or even truly coherent, discussion about the basis for the weight he gave to the opinions." (Doc. 11 at 17). For example, the ALJ failed to explain why he did not include the manipulative limitation provided by Dr. Goodpasture by

10

including a limitation to "occasional reaching" in any direction, (Tr. 690), despite giving "great weight" to Dr. Goodpasture's opinions.

The Defendant offers little explanation for the omission, other than suggesting that the decision to give the opinion "great weight" as opposed to "controlling weight" allowed the ALJ to pick and choose among the limitations without further discussion. However, that view is not supported by case law. While it is true that the ALJ need not adopt the "precise language" offered in a medical source opinion, it is error for the ALJ to not provide any explanation at all that would allow meaningful review to ascertain whether substantial evidence exists to reject the limitation. *See Bledsoe v. Com'r of Soc. Sec.*, Case No. 1:09-cv-564, 2011 WL 549861 (S.D. Feb. 8, 2011)(remanding based upon ALJ's failure to include specific limitations, without any explanation, and despite giving the opinion significant weight).

Plaintiff also persuasively argues that the ALJ erred by failing to adequately explain why he gave "little weight" to the VA's extremely detailed Disability Ratings Decision. Although it is true that the ALJ cited a regulation that provides that a disability determination made by another agency "is not binding" for purposes of social security, 20 C.F.R. §404.1504, the regulatory scheme does not provide a carte blanche excuse rejection without adequate explanation. Here, the ALJ seems to have rejected the objective evidence cited in the Disability Decision based primarily upon the ALJ's adverse credibility finding. That was error. The rejection of the detailed VA's disability decision on the basis of a suspect credibility determination cannot be affirmed, in light of the ALJ's superficial treatment of, and/or omission of, reference to critical records on which the VA decision relied.

11

It is worth noting that the VA's disability determination arguably carries extra weight, at least to the extent that VA physicians were Plaintiff's primary treating physicians. The Commissioner argues that the ALJ was entitled to discount the VA's disability determination because it conflicted with other evidence in the record, such as the previously referenced MRI findings and Dr. Shyngle's consulting examination, as well as a 2010 biopsy procedure in which Plaintiff reported no back pain. (Tr. 63); *see also* 20 C.F.R. §404.1527(c)(2). Reliance on the single biopsy note was clearly misplaced, as even the Commissioner concedes. The MRI evidence, as discussed, also fails to support the rejection of the VA disability determination. Last, Dr. Shyngle cites primarily to his own one-time examination findings, and appears not to have considered more recent objective test results including Plaintiff's MRI and EMG findings that were considered in the VA determination.

Moreover, it is not entirely clear what weight the ALJ gave to Dr. Shyngle's opinions. Although the Defendant concedes that the ALJ failed to articulate the weight he was giving to those opinions, the Defendant claims it is "obvious" that they were considered, based on the RFC findings that arguably correspond with Dr. Shyngle's opinion that Plaintiff had "mild to moderate restrictions for strenuous physical activities." (Doc. 15 at 5, citing Tr. 61, 63, 649). Alternatively, the Defendant asserts that Dr. Shyngle's opinions were outside the scope of "medical opinions" that the ALJ was required to consider, because Dr. Shyngle offered no specific residual functional limitations other than the restriction of "strenuous" activities. (Doc. 15 at 8).

On remand, the ALJ should more thoroughly consider the VA's disability determination and the objective evidence cited within that report, and should state the weight that the ALJ is giving to each of the medical opinions he or she considers,

12

including but not limited to that of Dr. Shyngle.

### 3. The ALJ's Credibility Assessment

The ALJ determined that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 62). Plaintiff argues that the ALJ's adverse credibility assessment constitutes reversible error. I agree.

The ALJ summarized the basis for his adverse credibility assessment as follows:

> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant admitted to walking 3 miles a day, 7 days a week in February 2010. He also admitted, in August 2010, that [he] was able to do light household chores, shop, ride his bike and swim short distances. (Exhibits 2F, 4F). Additionally, the objective medical evidence of record does not show disabling limitations and the claimant does not take any pain medications because he refuses to stop abusing marijuana. If his pain was as severe as he asserts, he would have limited his marijuana use to avail himself of pain medications.

(Tr. 62). The ALJ repeated essentially the same analysis elsewhere in the opinion, further citing the Plaintiff's failure to note pain in a biopsy treatment note. The ALJ similarly stated: "He is not taking any medications for pain because he uses marijuana for pain and does not want to use narcotics because he believes he becomes a 'zombie' on narcotics. He believes marijuana makes him more active." (Tr. 62, 63).

Consistent with his medical records, Plaintiff testified at the hearing that he chose not to take narcotic medication:

> [Plaintiff] A: I use marijuana for pain medication. I can be on narcotics, you know, but taking three or four narcotics a day, I wouldn't do nothing. I'd be a zombie. And I wish there was another way to relieve the pain, but it is the most effective way that I have found and I've tried them all.

13

> Q: VA has advised you not to take the marijuana?
>
> A: They do and, you now, they feel that if you quit marijuana, we'll make you a junkie. I don't want to be a junkie. I just need the pain relief. I've studied why it does it. I think the reason why it works is pretty simple. It puts a coating on the nerve endings in the brain, which diminishes the amount that you get through the nerve endings.
>
> Q: Do you feel the marijuana makes you less able to be active or more able?
>
> A: In my case more active. When I did take the narcotics, I didn't want to get off the couch. The marijuana actually gives me a boost – I know it's not that way for most people – but I actually get a boost of[f] it, as well as the pain, to help with the pain.

(Tr. 86-87).

The Defendant concedes that two reasons cited by the ALJ for the adverse credibility determination are suspect. For example, the Defendant admits "the ALJ's reliance on [the biopsy note] is far from perfect." (Doc. 15 at 9). The Defendant further concedes that Plaintiff "has a [valid] point that marijuana is an effective pain reliever," (Doc. 15 at 7), despite it being illegal in Ohio at the time of the ALJ's decision. However, the Defendant maintains that the ALJ's credibility assessment on the whole is still supported by substantial evidence.

Courts are understandably reluctant to overturn a credibility determination and this Court is no exception. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there

14

are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

Plaintiff asserts that his cervical and lumbar spine conditions cause him significant chronic pain, including radiculopathy and secondary symptoms. There is no question that pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Sec'y of H.H.S.,* 667 F.2d 524, 538 (6th Cir.1981).

> In order to find a claimant disabled on the basis of pain alone, the ALJ must first determine whether there is objective medical evidence of an underlying medical condition. *Duncan [v. Sec'y of HHS,* 801 F.2d 847, 852–53 (6th Cir. 1986)]. If there is, the ALJ must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged; or (2) whether the objectively established underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.* at 853. Although the plaintiff is not required to provide "objective evidence of the pain itself" in order to establish that he is disabled, *id.,* statements about his pain or other symptoms are not sufficient to prove his disability. *Id.* at 852 (citing 20 C.F.R. § 404.1529). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence ... would lead to a conclusion that [plaintiff is] disabled." 20 C.F.R. § 404.1529(a).
>
> In addition to the objective medical evidence, the ALJ must consider other evidence of pain, such as evidence of plaintiff's daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes; treatment other than medication plaintiff has received for relief of his pain; any measures plaintiff uses to relieve his pain; and other factors concerning his functional limitations and restrictions due to pain. *Felisky v. Bowen,* 35 F.3d 1027, 1037–38 (6th Cir.1994) (citing 20 C.F.R. § 404.1529).
>
> In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly.

15

*Manuell ex rel. Manuell v. Com'r of Soc. Sec.*, No. 1:11-CV-264, 2013 WL 1281746, at *3-4 (S.D. Ohio Mar. 27, 2013) *report and recommendation adopted,* No. 1:11-CV-264, 2014 WL 5089415 (S.D. Ohio Oct. 9, 2014).

While I do not do so lightly, I conclude that the ALJ's credibility assessment also requires remand. The other errors noted above, including but not limited to the ALJ's failure to adequately discuss all of Plaintiff's physical impairments and limitations resulting therefrom, and the improper weighing of some of the medical evidence, clearly contributed to the adverse credibility assessment.

### III. Conclusion and Recommendation

In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 173 (6th Cir. 1994), the Sixth Circuit set forth "what a district court should do once a determination is made that an ALJ erroneously applied the regulation and the Secretary's denial of benefits therefore must be reversed." *Faucher* explained that a trial court "can reverse the decision and immediately award benefits *only* if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* at 176 (emphasis added).

Notwithstanding the errors noted herein and the disability determination by the Department of Veterans Affairs, this is not a case in which all factual issues have been resolved. Many records reflect unremarkable or normal findings, negative straight leg raising tests, etc. Although some records report Plaintiff's "stooped" appearance and at least mildly antalgic gait, others observed a more normal gait. Likewise, Plaintiff's reports over the years are not free from inconsistency. In short, having carefully reviewed the record as a whole, the undersigned finds evidence of a disabling level of limitation to be inconclusive.

16

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** under sentence four, for further development of the record consistent with this report and recommendation, and that this case be **CLOSED.**

       <u>/s Stephanie K. Bowman</u>
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARK STEPHEN HICKS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:15-cv-110

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).